## CADE v. HOLT et al.

District Court, S. D. Texas.   July 9, 1927.

Armstrong & Cranford, of Galveston, Tex., for plaintiff.

Levy, Levy, Barker & Kahn, of Galveston, Tex., for defendants.

HUTCHESON, District Judge.   This is a suit in equity brought by the plaintiff, William Cade, a citizen and resident of the state of Louisiana, against the defendants Catherine Holt, her husband, C. A. Holt, Jr., Margaret Cade Sweet, and her husband, Harold R. Sweet, the ground of jurisdiction being, as stated by plaintiff, that plaintiff is a resident of the state of Louisiana; that the defendants Catherine Holt and husband are citizens of Texas, and the defendants Margaret Sweet Cade and husband are citizens of New York; and that the plaintiff by this action seeks to establish and enforce legal and equitable liens and claims to real and personal property situate in the Southern district of Texas, and in the Galveston division thereof, to which real and personal property the defendants claim title.

The petition alleges: That on May 31, 1909, and long prior thereto, plaintiff owned an undivided one-fifth interest in the property and assets of Cade & Co., a partnership composed of C. T. Cade, William Cade, Overton Cade, and J. J. Taylor; that C. T. Cade owned a two-fifths interest in the property, and the others named owned each a one-fifth interest. That on the 31st of May, 1909, the property and assets of the partnership consisted of 13,000 acres of land and 1,800 head of cattle.

That in addition to the partnership lands plaintiff on that date owned other lands which had been acquired by him by a prior partition made by the firm of Cade & Co. That so owning these lands part in entirety and part in cotenancy, plaintiff on or about the 31st day of May, 1909, executed a general warranty deed to Charles Taylor Cade, to all of the plaintiff's interest in the partnership property, and to his individual property; the descriptive portion of said deed containing the following language: "All of my right, title and interest in the partnership property and assets owned by Cade & Company my interest being an undivided one fifth interest in said firm; and also all other property of whatsoever description owned by me individually, whether acquired by me alone or as a member of the firm of Cade & Co. and whether held jointly by C. T. Cade and myself and the other members of said firm, or whether the same has been partitioned and set aside to me, and wheresoever situated in the State of Texas, the greater portion of said property being situated in the Counties of Galveston, Chambers and Jefferson in said State, including all horses, cattle and mares, brands and branding irons. This conveyance also including all the lands set aside to me in the agreement of partition dated the 3rd day of January, 1906, among the members of the firm of Cade & Co."

This deed bore date of May 24, and was acknowledged on June 5, 1909. It reserved a vendor's lien for the unpaid purchase money which purchase money was subsequently paid and the land released.

Plaintiff further alleges that contemporaneously with the delivery of said deed the plaintiff and Charles T. Cade entered into a written contract and agreement as follows:

"This agreement between Chas. T. Cade and William Cade, witnesseth:

"The said William Cade has sold to Charles T. Cade all his right, title and interest in the firm of Cade & Company and in all the lands and personal property of said firm, which conveys all the right, title and interest that the said William Cade has in lands in Galveston, Jefferson and Chambers Counties, howsoever described, at full present values and without any consideration for any future prospective or speculative value, and without any qualification or reservation except the vendor's lien to satisfy the balance of the purchase money. That the said C. T. Cade, without limiting or qualifying his title or estate in all of said lands and reserving to himself the absolute title, without any right, lien or claim or incumbrance of any kind upon any of said land, except the vendor's lien reserved in the deed, and with the understanding and agreement that no claim shall be made by said William Cade against said land or any part thereof, or the product of said land, in the event that minerals should be discovered thereon, and with a further understanding that the said William Cade shall not in any way interfere with the said C. T. Cade in handling or disposing of any mineral produced from said land—the said C. T. Cade promises to pay to the said William Cade a one fifth portion less proper charges, of the net proceeds received from the sale of any such mineral.

"It is distinctly understood and agreed, however, that this agreement shall not be enforced by any claim against the land or the said C. T. Cade's right, title and estate in said lands, or the proceeds from the sale in said lands, or the sale of the mineral products from said land but shall be enforceable only as a money demand against the said C. T. Cade.

"Executed at Galveston this 31st day of May, A. D. 1909.

"C. T. Cade,
"William Cade."

Plaintiff further alleges that petroleum had been discovered in lands adjacent to the lands of Cade & Co. as early as 1899, and for many years prior to the execution of the deed and contract strong indications of the presence of petroleum had been observed from time to time, and it was generally known and believed in the community and by the plaintiff and Charles T. Cade that there was petroleum and other mineral deposits in the said lands. Plaintiff alleges that it was not intended by the parties to the instruments set out to convey to C. T. Cade the minerals in said lands, but it was their intent and purpose that while C. T. Cade should be vested with the legal title, the full beneficial interest of the plaintiff in all the minerals in said lands should be reserved to him, and there was created by said contract an express continuing trust, whereby the said C. T. Cade held, and his legal representatives and heirs hold, as an incident to the title to said lands, the legal title to the minerals, mineral rights, and proceeds of the minerals in trust for the benefit of plaintiff.

That the interest reserved to plaintiff was one-fifth in the partnership lands and all of the mineral rights in the individual lands.

Plaintiff further alleges that on the 6th day of March, 1912, the said C. T. Cade died, having devised to his daughters Catherine Holt and Margaret Cade Sweet all of his property and leaving surviving him his widow and his two daughters. That Elizabeth Kerr Cade, the widow, died on the 25th day of December, 1920, leaving by will all of her interest in the property to her two daughters.

That administration on both estates has long since been closed, and that the defendants own all of the estate and title of the said C. T. Cade, in all of the property of the said C. T. Cade and his wife, Elizabeth Kerr Cade, and have taken possession of and are holding and managing the property.

He further alleges that he is informed and believes that during the year 1919 oil was produced from some of the lands described in his petition; in 1923 oil was again produced from the lands, and that since said time defendants have received and are receiving royalties and other proceeds from the minerals and mineral rights in said lands.

That plaintiff learned of the production of oil during the year 1925. That he called upon the defendants for an accounting and to pay over to him his portion of the proceeds, and they declined to pay and denied that he had any right in the minerals or their proceeds, repudiated the contract and agreement, and aré now claiming the full and complete title to said lands and minerals free of any claim on the part of the plaintiff.

The petition then sets out the instruments executed by defendants conveying mineral rights and lands upon a consideration of their mineral value, the receipt by defendants of various sums, the liability of

defendants to account to plaintiff for certain amounts, and asserts a lien and charge upon the property for the protection and collection thereof, and prays in effect that plaintiff's interest in the minerals and the mineral rights be established; that the defendants be adjudged to hold in trust for plaintiff the said mineral rights, and in the alternative that plaintiff have judgment against the defendants for the amount of his interest in the royalties and other considerations received by the defendants.

The defendants move to dismiss the petition on the ground of want of jurisdiction, in that the petition on its face shows that it is an effort to assert a mere money demand against the defendants, citizens of different states, and is not a suit for interest in land.

They further subject to their motion to dismiss for want of jurisdiction the ground that the bill shows no equity, and they plead statutes of limitations and the defense of laches and stale demand.

For answer they admit that oil was found in and produced from the lands described in plaintiff's petition as early as 1914 and again in 1921, but that they received no royalty nor returns from oil in said lands until 1922. They set up that they have incurred many and various expenses and charges and costs in handling the lands and receiving and obtaining returns therefrom, and that if they are liable, they are entitled to deduct the sums due by plaintiff on account of these expenses and charges.

They further plead that the instrument in suit is without consideration, was executed after the transfer by plaintiff of all his right and interest in the property described in plaintiff's petition, was a mere gift, and never did have and has not now any enforceable character.

On the trial of the case, over the objections of the defendants, William Cade testified that the conveyance from him to his brother as first prepared by Hugh Jackson, an attorney at Beaumont, contained a direct reservation of the mineral rights in favor of William Cade; that C. T. Cade refused to buy the land with any reservations in the deed, stating that he would not buy if there was any reservation of any kind connected with the sale; and it was finally agreed that William Cade should make a straight deed of complete conveyance and that C. T. Cade would execute the contract set out in the petition and personally protect William Cade in case anything was derived by him from the minerals in the land.

He also, over the same objection, testified that the contract and deed, though dated differently, were executed simultaneously and were part of the same transaction.

· The evidence showed: That C. T. Cade, without having sold any of the land, without having produced any oil or minerals of any kind from it, and without having received anything on account of minerals in or under said land, died, leaving surviving him his wife and two children, defendants in this suit. That his wife, without receiving anything on account of the minerals, thereafter died, leaving as sole heirs the two children.

After Cade's death, the husband of Catherine Holt diligently prosecuted efforts to lease the lands or sell them for mineral purposes and was finally successful in doing so, he having some time in 1922 and continuing to the date named made sales of lands at prices greatly in excess of their surface value and also made leases under which bonuses and rentals were received, and in some instances from which the defendants have received small amounts of royalty from actual production.

The defendants, until some time before this suit was filed, did not know and had never heard of the contract which is the basis of it, and the plaintiff William Cade testified, and I find, that he did not know until 1922 that there had been any production of any kind on the land. The evidence shows correspondence between defendants and plaintiff from time to time since the death of C. T. Cade, but no mention, until this controversy arose in 1923, of the contract held by William Cade or of his having any claim to the lands. He testified that in 1923, hearing there was production, he undertook to prosecute his claim, and it having been denied by defendants, has been diligently prosecuting it since.

From the evidence I find: That it was not the intention of the parties that there should be any reservation of any kind against the land. That it was distinctly understood and agreed between them that the lands should pass to Cade free and unincumbered, with the absolute right on his part to sell, devise or and dispose of them in any way he saw proper. That the instrument of May 31 was intended to and did effect merely a personal obligation on the part of C. T. Cade to pay over to William Cade the aliquot part of the moneys specified in the contract, derived by him from the production of minerals or their sales or proceeds after deducting reasonable expenses in connection therewith.

This is, I think, clear from the contracts themselves; but I think it is made more clear from the oral testimony of William Cade. Nor do I think it material whether the instruments were executed contemporaneously with each other, or the contract, as its date shows, subsequently, since C. T. Cade produced no minerals, and the terms of the contract, being purely personal as to him, never became effective. If C. T. Cade had produced minerals and had failed to pay William Cade, as he had agreed to do, the aliquot part provided in the contract, it might become material to inquire whether the contract of May 31 was a mere instrument of gift, or a contract upon consideration; but since nothing was produced by C. T. Cade to which the terms of the instrument could become applicable whether it was upon consideration or by way of gift becomes academic.

Counsel for plaintiff argues very forcefully for a trust, but the force of the argument is broken by the fact that the premise upon which the argument rests, that it was intended by the parties as a part of the consideration of the conveyance to charge C. T. Cade with a trust with reference to the minerals, which trust was appurtenant to the land and was to be enforced by a lien or charge upon the land after the death of C. T. Cade, is an assumption and is not established by proof.

The plain and simple facts of the case are, as established clearly both by the testimony of William Cade and the instruments themselves: That William Cade conveyed his interest and title in the property without reservation of any kind (except the vendor's lien which was subsequently released) to his brother, and that the brother undertook as a personal covenant, and only as such, to pay over to the grantor the aliquot part of any money received by him from the development of oil on the land. That he received nothing, and therefore owed nothing. That when his estate passed at his death it passed with the same title that he owned, which was absolute and unincumbered by any trust. That his personal agreement, supported as it was by no charge upon the land, could not and did not pass as an obligation to his children, and that it would be a species of legal legerdemain to transform an agreement which created only a personal promise of an ancestor, unsupported by any charge upon the land, into an interest in land; in short, it would be creating something out of nothing.

While, therefore, the pleadings, asserting as they do an interest in the land, are sufficient to confer jurisdiction upon this court to hear and determine this cause, I think it equally plain that upon the evidence no cause of action is made out.

Since then it is my opinion that the instruments in suit neither by themselves, nor aided by the verbal testimony, give William Cade any right over against the defendants or the property in their hands, I find it unnecessary to decide whether the suit has been unduly delayed, and is therefore barred by laches, or whether any of the statutes of limitations have application.

Let a decree be presented within 15 days dismissing the plaintiff's suit for want of equity.